UNITED STATES OF AMERICA
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| **GALE CAMPBELL AND KEVIN CAMPBELL** | : | **CIVIL ACTION NUMBER** |
| **VERSUS** | : | **JUDGE** _____ |
| **GECOS G.M.B.H.** | : | **MAGISTRATE**_____ |

_____

<u>**PETITION FOR INVOLUNTARY LIQUIDATION AND DISSOLUTION OF THE LIVE OAK GROUP, LLC AND MATERIAL BREACH OF THE AMENDED OPERATING AGREEMENT**</u>

**NOW INTO COURT**, through undersigned counsel, come **GALE CAMPBELL** and **KEVIN CAMPBELL,** who respectfully represent that:

1.

Plaintiff, **GALE CAMPBELL** is a person of full age of majority, a resident of Lafayette Parish, Louisiana, and is a thirty-five percent (35%) owner of The Live Oak Group, LLC.

2.

Plaintiff, **KEVIN CAMPBELL** is a person of full age of majority, a resident of Lafayette Parish, Louisiana, and is a fifteen percent (15%) owner of The Live Oak Group, LLC.

3.

Made Defendant herein:

A.  **GECOS G.M.B.H.**, a company located at Alserstrasse 21/10B in Vienna, Austria 1080, which owns fifty percent (50%) of **THE LIVE OAK GROUP, LLC.**[1]

4.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332.

_____

[1] Hosam Ghadamsi, a person of full age of majority and a resident of Vienna, Austria, owns ninety percent (90%) of GECOS G.M.B.H.

5.

Venue is proper in this district pursuant to 28 U.S.C. §1391. Additionally, the Amended Operating Agreement of The Live Oak Group, LLC, agreed to by the parties herein, specifically provides:

> "[A]ny suit involving any dispute or matter arising under this agreement may only be brought in the United States District Court for the Western District of Louisiana or any Louisiana State Court having jurisdiction over the subject matter of the dispute or matter. All Members hereby consent to the exercise of personal jurisdiction by any such court with respect to any such proceeding."

6.

Live Oak owns and operates real property, all of which is located in Lafayette Parish, Louisiana.  The properties owned by the LLC are described on "Exhibit A – In Globo" attached.

7.

In June of 2009, Kevin Campbell created a Louisiana Limited Liability Company named Campbell Remediation which was used to work with GECOS on projects regarding the chemical tank cleaning technology and bioremediation.

8.

On November 17, 2010, Kevin Campbell renamed the business from Campbell Remediation, LLC to The Live Oak Group, LLC ("Live Oak"). At this time, Live Oak had all of the requisite Intellectual Property ("IP") regarding the technology (i.e. products, formulations, and application methods) to create the chemical tank cleaning technology and other bioremediation chemicals.

9.

On or about March 1, 2011, Kevin Campbell made Gale Campbell a thirty-five percent (35%) owner of Live Oak. In consideration for the thirty-five percent (35%) ownership in Live Oak, Gale Campbell agreed to continue to create Intellectual Property ("IP") regarding the technology (i.e. products, formulations, and application methods) to create the chemical tank cleaning technology and other bioremediation chemicals.

10.

Also on or about March 1, 2011, Kevin Campbell made GECOS a fifty percent (50%) shareholder of Live Oak after GECOS agreed to fund Live Oak for one full year. In consideration for a fifty percent (50%) ownership in Live Oak, GECOS agreed to provide the "start up contribution" to Live Oak during the "start up phase" of the company. On March 1, 2011, Kevin Campbell, Gale Campbell and GECOS signed an Amended Operating Agreement (the "Agreement") memorializing their agreements.

11.

Under the "start up contribution" section of the Amended Operating Agreement, GECOS was obligated to compensate Gale Campbell and Kevin Campbell for their services, and to contribute capital to the Company in an amount sufficient to cover the following operating expenses of the company: (1) office rent, (2) automobile for Gale Campbell, (3) health insurance for Gale and Kevin Campbell, (3) business travel expenses and entertainment expenses, (4) operating expenses, (5) ordinary legal expenses relating to or incurred with the Company only, ordinary accounting expenses, including without limitation, personal accounting expenses of Gale Campbell and Kevin Campbell arising from their Membership in the Company or services provided to the company.

12.

Under the Amended Operating Agreement Gale and Kevin Campbell were required to deposit the Intellectual Property ("IP") to with a mutually agreed upon escrow agent (hereinafter referred to as the "transferred IP"). After the signing of the Amended Operating Agreement, the Campbells transferred the IP to the attorney who created the Agreement, namely Robert Waddell. Thereafter, Gale Campbell sent an email to Hosam Ghadamsi (the majority owner of GECOS) and identified that Gale transferred the IP to Mr. Waddell. Mr. Campbell never heard back from Mr. Ghadamsi regarding the transferred IP until March of this year.

13.

The Amended Operating Agreement states that upon dissolution of the company, the escrow agent is to release the transferred IP to the interest holders of the company,[2] if and only if, GECOS fulfilled all of its obligations under the Amended Operating Agreement.

14.

In order to sell the products and services of Live Oak, Live Oak's members decided to join up with LGM Environmental Services, LLC ("LGM"). LGM is a service company registered in the state of Delaware LLC with its principal place of business in Houston, Texas. Upon information and belief, both Live Oak and GECOS have an ownership interest in LGM.

15.

LGM is the retail sales and service company of Live Oak. The two companies are integrally linked with Live Oak providing the technology and LGM providing the sales and service. The duties of the members of LGM were (1) GECOS, which provided the funding, (2) Larry Slusser, as the President, (3) Gale Campbell, who provided the technology, formulations,

---

[2] Currently, Live Oak Group, LLC is owned in the following member percentages (1) Kevin Campbell 15%, (2) Gale Campbell 35%, and (3) GECOS 50%.

application of methods through Live Oak, and (4) Mike Kramer, who was responsible for sales and service.

16.

Under the Amended Operating Agreement for Live Oak the owners agreed that all proceeds distributed to them by LGM shall be allocated and distributed by Live Oak "only  to Gale Campbell and Kevin Campbell in proportion to an agreement between them and shall not be distributed to GECOS for the term of this Agreement." In exchange for the allocation and distribution to the Campbells, the parties agreed that GECOS would have the right to vote by proxy on behalf of Live Oak in any authorized meetings held by the members of LGM. The foregoing section of the Agreement also states that upon dissolution and liquidation of the Live Oak, Live Oak's membership interest in LGM shall be distributed to the Campbells in proportion as mutually agreed between them and to the exclusion of GECOS.

17.

Once Live Oak and LGM were in place, the parties conducted business for nearly one year under their agreements.

18.

In February of 2012, the Campbells through Live Oak made an additional funding request to GECOS. This request was made within the "start up phase" of Live Oak identified in the Amended Operating Agreement.  After receiving the request, GECOS refused to submit any additional funding to Live Oak, thereby preventing Live Oak from ordering materials and essentially operating the business.

19.

GECOS materially breached the Amended Operating Agreement and has failed to fulfill its obligations under same. Specifically, GECOS failed to fully and completely fund Live Oak for the duration of the "start up phase". Therefore, under the Agreement, GECOS has no legal right or interest in the intellectual property created by Gale and Kevin Campbell. Specifically, the IP identified and/or defined in the Amended Operating Agreement.

20.

Additionally, GECOS has no legal right to and/or interest in any other intellectual property or patents created, invented, discovered, patent applications, trademarks, service marks, trade names, trade dress, copyrights, copyright application and registration, mask works, mask work registration and applications, industrial designs, industrial design registrations and applications, know-how, and other proprietary information which Gale or Kevin Campbell possess.

21.

Shortly after GECOS refused to continue funding Live Oak, Mike Kramer and the Campbells offered to buyout GECOS' interests in both LGM and Live Oak. However, GECOS rejected that proposal.

22.

Shortly thereafter on March 15, 2012 the Campbells received a demand letter from GECOS requesting information from Live Oak, and that they transfer the intellectual property ("IP") conceived, invented, created and/or developed in connection with the use or intended use of Live Oak's business including any documents, tests with formulas and information related to the IP, and to transfer the IP to an escrow agent.

23.

Since Live Oak's request for funding in February of 2012, the relationship between the members of Live Oak and LGM has deteriorated to the point where it has become impossible to effectively manage and operate Live Oak. Specifically:

A.  The defendant, GECOS has not performed any work for the benefit of the business.

B.  The defendant, GECOS has failed to contribute any capital to either Live Oak or LGM since February of 2012.

C.  The defendant, GECOS has withdrawn over EIGHTY THOUSAND DOLLARS ($80,000.00) out of the LGM's bank accounts. LGM is now without capital to conduct sales of products for Live Oak. The defendant's use of the LLC's profits was done without regard to the welfare of the business and it has become impractical to continue conducting business.

D.  Mike Kramer, the sole salesman for LGM has resigned due to the actions of GECOS at the last member meeting of LGM. Specifically, GECOS used its voting percentage (through its ownership in LGM and its proxy vote for Live Oak) to significantly reduce Mr. Kramer's authority, and to eliminate his salary and expense account.

24.

Since receiving the March 15, 2012 demand letter the Campbells have not conducted any business on behalf of LGM and/or Live Oak.

25.

In accordance with the Amended Operating Agreement the parties attempted to resolve their dispute by attending a one-day mediation at the Lafayette Bar Association in Lafayette, Louisiana on April 16, 2012. Although the parties were not able to resolve their dispute during

said mediation, they were able to negotiate and sign a mediation agreement which outlined the transfer of the IP to an escrow agent and the dissolution of Live Oak.

26.

Since the mediation agreement was signed, the Petitioners have attempted to amicably resolve the issues between the parties and in good faith, have met with the Defendants' expert, Mr. Chainey P. Singleton, Ph.D, J.D., and provided all of the information necessary for identification and transfer of the IP to a mutually agreed upon escrow agent, namely Iron Mountain. Under the mediation agreement, Mr. Singleton was required to verify the description and sufficiency of the Intellectual Property no later than April 23, 2012. However, due to the defendants continuous demand for additional information which is not part of the IP identified in the Agreement and/or due to Mr. Singleton's unexpected absence from the country, Mr. Singleton has not met the deadline. Although the Campbells have provided all of the necessary information, as well as several time extensions to verify the description and sufficiency of the IP, Mr. Singleton and the defendant has yet to comply with the mediation agreement.

27.

The defendants have breached the mediation agreement and thus it is nullified. As such, Gale and Kevin Campbell now seek the dissolution and liquidation of Live Oak as it is outlined under the Amended Operating Agreement.

28.

The Amended Operating Agreement between the owners of Live Oak states that the Company shall be dissolved upon the happening of any of the following events: when the period fixed for the duration of the company expires; upon unanimous written agreement of the Members; or a final, non-appealable judgment of a court of competent jurisdiction dissolving the

company. Here, the period fixed for the duration of the company has not expired and the parties have not been able to agree unanimously in writing to dissolve the company. Thus, the only remaining option is through the court system.

29.

As outlined in the Amended Operating Agreement for Live Oak, the defendant's actions and/or inactions prevent the release and/or license of the intellectual property to the defendant. Specifically, Hosam Ghadamsi through GECOS failed to fulfill its obligations under the Amended Operating Agreement and therefore the defendant is prevented from any rights in and to Live Oak's IP.

30.

Additionally, the Agreement identifies that upon dissolution and liquidation of the Live Oak, Live Oak's membership interest in LGM shall be distributed to the Campbells in proportion as mutually agreed between them and to the exclusion of GECOS. As such, the Campbells demand the foregoing.

31.

The Petitioners have attempted to amicably resolve the issues between the parties and in good faith, have negotiated with the Defendants for the acquisition of his portion of business, as well as for the voluntary liquidation of the business, but the parties have been unable to agree on terms and conditions regarding the dissolution and voluntary liquidation.

32.

For the foregoing reasons, the petitioners assert that the issues between the parties have continued over several months and are irreconcilable. Plaintiffs therefore allege that it would be in the best interests of the parties, and of their creditors, to place the company in involuntary

liquidation, appoint a liquidator to take possession of the property of the LLC, to liquidate the assets in such manner as the court may direct, and to distribute the proceeds to the persons legally entitled, all at the cost and expense of Live Oak.

33.

Petitioners are willing to undertake the responsibility for such liquidation, and Petitioner would object to defendant's doing so. Moreover, because of the present deteriorated state of the relationship between the parties, plaintiff does not believe that it would be feasible for the parties to carry out liquidation by a joint effort.

34.

The "liquidator" of Live Oak needs to perform the following functions:

A. Hire an independent public accountant to perform a full accounting of the assets and liabilities of the LLCs in accordance with generally accepted accounting principles;

B. A winding up of the LLCs' business affairs by completing any business then in progress;

C. Liquidating the LLCs' assets to the extent practicable;

D. Pay any and all outstanding taxes;

E. Ensure that all of LLCs' creditors are paid, including Members who are creditors, to the extent permitted by law, in satisfaction of liabilities of the LLC other than liabilities for distributions to Members;

F. Establish reserves which are deemed by the liquidator, as the case may be, as reasonably necessary for any contingent or unforeseen liabilities of the LLCs arising out of or in connection with the LLC or its liquidation, these reserves will

be held by the Liquidator for such a period as they shall deem advisable and the balance thereafter remaining shall be distributed in the manner provided below:

    i. The LLC will make any distribution necessary to satisfy liabilities to Members or former Members for any unpaid interim or withdrawal distributions;

    ii. The LLC will distribute to the Members, the balance, if any, in their Capital Accounts, in proportion to their respective balances; and

    iii. The LLC will distribute the balance, if any, to the Members in the proportions in which they share net profits and net losses in accordance with their respective percentage interests in the LLC.

**WHEREFORE**, premises considered, plaintiffs, GALE CAMPBELL and KEVIN CAMPBELL, pray that this, its complaint, be allowed to be filed of record and that the defendant, GECOS G.M.B.H., be duly cited and served and ordered to appear herein and respond to this complaint and that after all legal delays and due proceedings had, there be judgment rendered herein in favor of GALE CAMPBELL and KEVIN CAMPBELL, and against the defendant, GECOS G.M.B.H. granting their request for:

    A. Judgment ordering the liquidation and ultimate dissolution of The Live Oak Group, LLC;

    B. Upon dissolution and liquidation of the Live Oak, Live Oak's membership interest in LGM shall be distributed to the Campbells in proportion as mutually agreed between them and to the exclusion of GECOS;

C.  Appointment of a liquidator to take possession of the LLCs' assets and to hold them during the pendency of this proceeding and until entry of judgment, at the cost of the LLC;

D.  An order that the assets of the LLCs be liquidated , at the cost of the LLC, by the liquidator in such manner and on such terms as the court may direct;

E.  An order of this Court, determining the amount of the bond to be furnished by Plaintiffs to cover the additional cost and compensation to be paid to the jury, and further ordering the trial of this case by jury, in due course.

F.  The defendant show cause, on a date and at a time to be fixed by the Court, if any cause it has, why:

　　i.  **THE LIVE OAK GROUP, LLC** should not be placed into involuntary judicial liquidation, pursuant to the orders of this court,

　　ii.  GECOS is not entitled to and/or has any right in the IP owned by Live Oak,

　　iii.  Live Oak's membership interest in LGM should not be distributed to the Campbells and to the exclusion of GECOS;

　　iv.  A liquidator should not be appointed, and

　　v.  Such other and further relief as the court deems appropriate.

Respectfully submitted:

**DAVIDSON, MEAUX, SONNIER, McELLIGOTT, FONTENOT, GIDEON & EDWARDS**

BY:  _/s/Theodore G. Edwards, IV_
**JAMES J. DAVIDSON, III (#4708)**
**THEODORE G. EDWARDS, IV (# 18195)**
**JACOB H. HARGETT (#32490)**
P. O. Box 2908
Lafayette, LA  70502
(337) 237-1660
*Attorneys for Gale Campbell and Kevin Campbell*

**PLEASE SERVE:**

**GECOS G.M.B.H.**
Through its attorney
**Catherine Davidson**
1100 Poydras Street
Suite 1700
New Orleans, LA  70163

**GECOS G.M.B.H.**
Through its agent
**The Corporation Trust company**
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

**GECOS G.M.B.H.**
Through its agent
**CT Corporation System**
1200 S. Pine Island Road
Plantation, FL 33324